*FILED*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 APR - 1  AM 9: 54

U.S. DISTRICT COURT
N.D. OF ALABAMA

EUGENE BROWN, Sr.,            )
AIS # 152929                 )
                             )
        Plaintiff,           )
                             )
vs.                          )        Case No. CV-96-N-0318-S
                             )
ALABAMA DEPARTMENT OF        )
CORRECTIONS; WILLIAM E.      )
DONALDSON CORRECTIONAL       )
FACILITY; COMMISSIONER RON   )
JONES; WARDEN ROY HIGHTOWER; )
CAPT. CULLIVER; DEPUTY WARDEN )
S. DEES; DR. LYRENE; DR.     )
BECKMAN; NURSE G. CASH; NURSE )
ARTHUR; OFFICER GIVENS; OFFICER )
LAMPLEY; DR. WILLIAMS; and DR. )
JOSEPH,                      )
        Defendants.          )



ENTERED
APR 1 1997

MEMORANDUM OF OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 in
which the plaintiff, Eugene Brown, Sr., alleges that his constitu-
tional rights were violated in several different ways while
incarcerated at William E. Donaldson Correctional Facility in
Bessemer, Alabama.  The *pro se* complaint was filed on February 9,
1996, naming as defendants the Alabama Department of Corrections,
William E. Donaldson Correctional Facility, Commissioner Ron Jones,
Warden Roy Hightower, Captain Culliver, Deputy Warden S. Dees, Sgt.
Martin, Dr. Lyrene, Dr. Beckman, Nurse G. Cash, Nurse Arthur,
Officer H.D. Brown, Officer Golden, Officer J.A. Freeman, Officer

34

Givens, and Officer Lampley.[1]  In particular, plaintiff claims that he was denied adequate medical treatment in violation of the Eighth Amendment; that he was denied access to the courts in violation of the First Amendment and due process; that he was placed in a cell with a mentally unstable inmate in violation of the Eighth Amendment; that the general conditions of confinement at William E. Donaldson Correctional Facility amount to cruel and unusual punishment in violation of the Eighth Amendment; and that the grievance procedure has been abolished and disciplinary procedures are deficient in violation of due process.  He seeks injunctive relief and punitive damages.  Although this action was initially referred to a magistrate judge for a preliminary review and recommendation, see *McCarthy v. Bronson*, 500 U.S. 136 (1991), that reference is now withdrawn.

On February 23, 1996, a magistrate judge of the court entered an order for special report directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report responding to the factual allegations of the complaint.  The copies of the complaint and the order for special report sent to Officer H.D. Brown were returned to the court by the United States Post Office, with the notation on the envelope:  "Returned to Sender - Unclaimed

---

[1]In various papers and affidavits filed by plaintiff, he complains about perceived inadequacies in medical treatment provided by Dr. Cooksey.  Plaintiff claims that Dr. Cooksey, a former staff physician at William E. Donaldson Correctional Facility, has denied him medical care.  However, plaintiff did not name Dr. Cooksey as a defendant in this action.  Consequently, there is no claim against Dr. Cooksey in this action.

- No one here by this name." On March 12, 1996, the court entered an order directing plaintiff to supply the court with Officer Brown's correct address within fifteen days or suffer dismissal of the claims against that defendant. On March 15, 1996, plaintiff submitted a pleading in which he furnished the same address to which the copies of the complaint and the order for special report had previously been sent -- William E. Donaldson Correctional Facility. In this same pleading, plaintiff moved that Sgt. Martin be dismissed from this lawsuit. On March 27, 1996, the district court entered an order dismissing without prejudice both Officer Brown and Sgt. Martin. Plaintiff's motion to reconsider the dismissal of Officer Brown was denied by the district court in an order entered April 12, 1996.

On March 7, 1996, plaintiff filed a motion to amend his complaint by adding as defendants Dr. Williams and Dr. Joseph, whom he claims have denied him his psychotropic medications. Plaintiff also sought to add the following claims: that he was improperly searched by and otherwise harassed by Officer Lampley and that Officer Givens subjected him to harassment. In an order entered March 20, 1996, plaintiff's motion to amend was granted and the original defendants were asked to incorporate in their special report a response to the new allegations raised by plaintiff. Also on March 20, 1996, the court entered an order for special report directing that copies of the amended complaint in this action be forwarded to Dr. Williams and Dr. Joseph and requesting that they

3

file a special report responding to the factual allegations of the complaint.   By way of his motion to amend his complaint, plaintiff also moved to dismiss Officer Golden and Officer Freeman.   In an order entered March 20, 1996, the district court granted plaintiff's motion and dismissed without prejudice the claims against Officer Golden and Officer Freeman.

On March 26, 1996, the institutional defendants filed their special report attaching the affidavits of defendants Martin, Hightower, Dees, Culliver, Givens, Freeman, Golden, and Lampley. On April 18, 1996, these defendants filed a supplemental special report attaching the affidavit of Wendy Griffith[2] and the supplemental affidavits of defendants Dees, Martin, Givens, Lampley, and Hightower.   Dr. Joseph filed his special report on April 18, 1996, attaching his affidavit and a portion of plaintiff's medical records.   On April 22, 1996, the medical defendants[3] filed a special report attaching portions of plaintiff's prison medical records and the affidavits of Dr. Williams, Nurse Cash, and Nurse Arthur.   By order of April 29, 1996, the parties were notified that the special reports filed by the defendants would be construed as motions for summary judgment, and plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of*

---

[2]Ms. Griffith has no personal knowledge of the facts relating to plaintiff's claims; she states only that institutional personnel records reveal that there is no H.D. Brown currently employed at William E. Donaldson Correctional Facility and that the institution has never employed anyone by that name.

[3]The "medical defendants" refers to Dr. Lyrene, Dr. Beckman, Nurse Cash, Nurse Arthur, Dr. Williams, and Dr. Joseph.

*Civil Procedure*. Plaintiff filed a response on May 14, 1996.[4] In this response, plaintiff states that the evidence shows that "Ms. Arthur truly has not been deliberate[ly] indifferen[t] to the serious medical need of the plaintiff" and he moves to dismiss Nurse Arthur from this action. That request is due to be granted and all claims against Nurse Arthur are due to be dismissed with prejudice.

### Summary Judgment Standard

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail

---

[4]This response was accompanied by the affidavits of inmates Darryl Burns, Willie Sheffield, Michael Robertson, Reginal Ransom, Kenneth R. Houston, and Stanley Burton. All of these affidavits, except that of Kenneth R. Houston, concern an alleged denial of medical care of someone other than plaintiff. With the exception of the affidavit of Houston, these affidavits are irrelevant and will not be considered in determining the propriety of summary judgment.

as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

<u>Alabama Department Of Corrections</u>
<u>and William E. Donaldson Correctional Facility</u>

Plaintiff has named the Alabama Department of Corrections as a defendant. However, it is well settled that the Eleventh Amendment to the United States Constitution bars § 1983 claims in federal court against the state or an agency of the state. *Alabama v. Pugh*, 438 U.S. 781 (1978); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). As the Supreme Court has stated:

> [T]here can be no doubt... that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. at 782. Accordingly, plaintiff cannot maintain a § 1983 action against the Alabama Department of Corrections, and the claims against this defendant are due to be dismissed.

Plaintiff has also named as a defendant the William E. Donaldson Correctional Facility. However, the William E. Donaldson

Correctional Facility is not a legal entity subject to suit under 42 U.S.C. § 1983 and therefore is not a proper party defendant in this action. *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). Further, even if it is a legal entity subject to suit, it is entitled to the same absolute Eleventh Amendment immunity enjoyed by the Department of Corrections. Consequently, this action is due to be dismissed as to the William E. Donaldson Correctional Facility.

## Commissioner Jones and Deputy Warden Dees

Plaintiff names Commissioner Ron Jones as a defendant, but, with the exception of his claim that he has been denied his psychotropic medications, has not alleged that Commissioner Jones was personally involved in the incidents complained of. Aside from his assertion that Commissioner Jones directed that Ativan, one of his psychotropic medications, not be prescribed for prisoners, plaintiff attempts to implicate Commissioner Jones through the concept of *respondeat superior*. However, "[t]here is no *respondeat superior* liability under § 1983." *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995)(*citing Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978), and *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994)). Absent some allegation that Commissioner Jones knew of, sanctioned, participated in or was otherwise "affirmatively linked"

to the acts here complained of, the claims against defendant Jones, except for the claim concerning the denial of Ativan, are insufficient to state a cause of action under 42 U.S.C. § 1983. *See Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir. 1985), *cert. denied*, 476 U.S. 1115 (1986). Accordingly, except for the claim concerning the denial of Ativan, which is discussed below, this action is due to be dismissed as to defendant Jones.

Plaintiff names Deputy Warden Dees as a defendant, but does not allege that Deputy Warden Dees was in any way involved in the claimed violations of his constitutional rights.   Because plaintiff does not complain of any conduct committed by defendant Dees, the claims against Dees are insufficient to state a cause of action under 42 U.S.C. § 1983. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(one of the two essential elements in any § 1983 action is that "the conduct complained of was committed by a person acting under color of state law"), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).   To the extent that plaintiff is attempting to implicate Deputy Warden Dees through the concept of *respondeat superior*, there is, as noted above, "no *respondeat superior* liability under § 1983." *Harris v. Ostrout*, 65 F.3d at 917.  Accordingly, this action is due to be dismissed as to defendant Dees.

Inadequate Medical Care

In *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), "the Supreme Court held that deliberate indifference to serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment." *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). A two-part analysis is employed in determining whether an Eighth Amendment violation has occurred. "First, we must evaluate whether there was evidence of a serious medical need; if so, we must then consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). The first inquiry is objective; the second inquiry is subjective. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994).

"'[A] "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)). "[T]he medical need of the prisoner need not be life threatening" to be considered "serious." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988).

The second part of the inquiry -- whether the response of the defendants amounted to deliberate indifference -- is itself a

two-part determination. A defendant may be held liable for an Eighth Amendment violation only if he had "knowledge of the [plaintiff's] particular medical condition," *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1191 (emphasis omitted), *and* he acted intentionally or recklessly to deny or to delay "access to medical care" or to interfere "with the treatment once prescribed," *Estelle v. Gamble*, 429 U.S. at 104-05. *See also Mandel v. Doe*, 888 F.2d at 788. *See generally Farmer v. Brennan*, 511 U.S. at 825, ___, 114 S.Ct. 1970, 1977-81 (1994). "Mere negligence or medical malpractice" on the part of the defendants is not sufficient to support an Eighth Amendment claim. *Mandel v. Doe*, 888 F.2d at 787-88. *See also Estelle*, 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Barfield v. Brierton*, 883 F.2d 923, 939 (11th Cir. 1989). "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

Denial of Psychotropic Drugs

Plaintiff claims that Dr. Williams and Dr. Joseph have denied him his psychotropic medications.  Dr. Williams is the Director of Psychiatry for Correctional Medical Services, the corporation currently providing medical services to inmates in Alabama correctional facilities.  He states in his affidavit that plaintiff "has been diagnosed with a form of mental illness known as psychosis." Williams affidavit at 1.  A notation by Dr. Williams in plaintiff's prison medical records reveals that plaintiff has been a "mental case since [he] came into [the] system in 1989 [with] LWOP sentence" and that his "[m]ost consistent [diagnosis] has been AXIS I paranoid schiz[ophrenia]."  Medication has been prescribed in the past for plaintiff's mental problems.  On January 23, 1995, Dr. Woodley, a psychologist, noted that plaintiff was refusing "medication as ordered, but indicated that he would take Ativan, Navane and (Cogentin?)." (Parentheses in original.) It is not clear what medications were "ordered" at the time.  On February 6, 1995, Dr. Woodley noted that plaintiff "again expressed he might take Navane, Triavil, and Cogentin if offered to him."

Plaintiff was seen by Dr. Raymond Crittenden, a psychiatrist, on May 16, 1995.  Dr. Crittenden noted: "Requests to have Navane/Ativan restarted.  Stopped it when going to Kilby.  Had relief of nervous tension.  Irritable strange thought style reflects possible paranoia [with] inappropriate affect.  Well aware

of med regimen that helped him." On June 20, 1995, Dr. Crittenden noted: "Pt states he holds first dose of Cogentin until he gets the second dose." However, it appears that Dr. Crittenden renewed plaintiff's prescriptions for Ativan, Cogentin, and Navane.

On July 25, 1995, plaintiff was seen by Dr. Williams. Based on his examination of plaintiff, his review of plaintiff's mental health history, and plaintiff's documented past non-compliance with prescribed medications, Dr. Williams ordered that plaintiff be "taper[ed] off" the Ativan over a 30-day period. Plaintiff became angry and stated that he might as well be taken off the other medications. However, Dr. Williams encouraged plaintiff to continue taking the other medications. Dr. Williams explains in his affidavit that Ativan "is a form of narcotics used to combat the side effects of other forms of medication and in no way should be considered a necessary form of medication in treating mental illness." Williams affidavit at 2. Plaintiff states that Dr. Williams told him that his Ativan was discontinued because Commissioner Jones had ordered that Ativan no longer be prescribed for prisoners.

On September 6, 1995, Dr. Rankart, a psychologist, noted that plaintiff was "oriented, cooperative," "logical and coherent." Dr. Rankart further noted that plaintiff "[r]eported satisfactory sleep, appetite, energy level. Has a job cleaning on the block and D.O.C. reported he's apparently functioning reasonably well at this time." On September 20, 1995, Dr. Rankart noted: "Alert, oriented,

cooperative.  This writer expressed concern about inmate not taking medication from nurses.  Inmate said that when taking it from nurses he had been disposing of meds, not ingesting them."

Plaintiff was also seen by Dr. Joseph on September 20, 1995.  According to plaintiff, shortly after their "introduction," Dr. Joseph told him that the medications previously prescribed for him (apparently Cogentin and Navane) would be discontinued, and he would be started on "Thorazine, Polixin, Haldol and Cogin [sic] for side effects."  Amendment to complaint at 3.  Plaintiff states that he objected to this and asked Dr. Joseph "what were his descry or his derivative."  Id.  Plaintiff says that Dr. Joseph stated that he had been a psychiatrist for seven years, that he could "look at a book and tell whether or not it's good," and that he had "read [plaintiff's] jacket."  Amendment to complaint at 3.[5]  Plaintiff states that he then left the office, refusing to be treated by Dr. Joseph, and that he has not seen Dr. Joseph since.

Plaintiff has apparently not been given any psychotropic drugs since September 20, 1995.  However, his "medical records document that [his] condition appears to be in remission, even without the medication which [he] presently requests.  This inmate refused to live on the mental ward and according to the prison

---

[5]Dr. Joseph states in his affidavit that plaintiff requested that the anti-psychotic medications be discontinued and that, "[b]ased on [plaintiff's] wishes and [his own] professional medical judgment, [he] ordered that those medications be discontinued.  [He] told [plaintiff] to return for a follow up visit in one month. [Plaintiff] failed to keep that appointment."  Joseph affidavit at 1.  Dr. Joseph made the following notation in plaintiff's prison medical records: "D/C Navane, Cogentin at pt's request."

officers, the inmate has been functioning reasonably well.  He has
been cleaning around the cell block and getting along well with
officers and inmates." Williams affidavit at 2.

It is clear that the Eight Amendment right to medical
treatment "encompasses a right to psychiatric and mental health
care." *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir.
1994)(*citing Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.
1986)).   Discontinuing an inmate's psychotropic drugs without
adequate evaluation can constitute deliberate indifference to the
inmate's psychiatric needs. *See Steele v. Shah*, 87 F.3d 1266 (11th
Cir. 1996).  In this case, however, Dr. Williams has stated that
Ativan, one of the drugs prescribed for plaintiff, is in no way
necessary to treat mental illness; instead, it is prescribed merely
to alleviate the side effects of other medications.  Plaintiff has
offered no medical evidence to refute this statement.   While Dr.
Williams has not described the "side effects" Ativan is used to
alleviate, plaintiff has not alleged that he suffered any physical
problems while taking the Cogentin and Navane once his Ativan was
discontinued.  Furthermore, even if, as plaintiff claims, Commis-
sioner Jones ordered that inmates not be given this particular
drug, the undisputed medical evidence is that this drug is not
necessary to treat mental illness.

As to the Navane and Cogentin, plaintiff himself states
that Dr. Joseph discontinued these drugs, but prescribed other

medications for him.  It is readily apparent that plaintiff did not wish to have his Ativan, Navane, and Cogentin discontinued and that he did not wish to take the other medications that he says Dr. Joseph prescribed for him.  However, under the evidence that he has presented, plaintiff has established nothing more than a disagreement with Dr. Williams and Dr. Joseph as to how his mental illness should be treated, which does not amount to a constitutional violation.

Moreover, regardless of the reasons underlying the discontinuation of plaintiff's psychotropic drugs, Dr. Williams has stated that plaintiff's mental problems are in remission, even without the drugs.  Plaintiff does not dispute this statement.  Nor does he allege that he has been suicidal or that he otherwise posed a danger to himself or to anyone else at any time since his psychotropic drugs were discontinued. *Compare Steele v. Shah*, 87 F.3d at 1267-68 (inmate who was placed on psychotropic drugs because he was suicidal alleged that he "suffered from insomnia, anxiety, and various bodily pains" and experienced "feelings of hopelessness and helplessness," after the drugs were discontinued). The claims against Dr. Williams, Dr. Joseph, and Commissioner Jones are therefore due to be dismissed.

Nurse Cash

Plaintiff claims that Nurse Cash denied him medical care for a rash under his arm, for back, shoulder, and arm pains, and

for a "flu-like virus."  Plaintiff's prison medical records reveal

that, on December 12, 1995, plaintiff was seen at sick call

screening by Nurse Cash.  He complained of "a DOC injury to [his]

back," requested a shave profile, and asked to see the doctor.

Nurse Cash's notations are as follows:

> Refused vital signs.  Threatening law suit.
> Face essentially clear of hair bumps.  No
> indication for shave profile.  See x-ray
> 4/26/95 & notes from Dr. Cooksey -- <u>mild</u>
> degenerative disc disease that he states was
> caused by D.O.C. Unable to examine further.
> <u>Uncooperative</u>.  Interested in law suit only.
> Has refused any lab tests or to give a com-
> plete history.  See notes 5/23/95.

(Emphasis in original.)

On January 11, 1996, plaintiff was again seen by Nurse

Cash at sick call screening.  On that occasion, plaintiff com-

plained of a rash under his arm, pain in his back, left shoulder

and arm, and a "flu-like virus."  According to plaintiff, Nurse

Cash refused to examine his rash and refused him medical treatment

for all of his complaints.  Plaintiff states that Nurse Cash told

him that if the doctors wanted to see him, his name would be placed

in the newsletter.  She also told him to purchase over-the-counter

medications from the prison store.  In her affidavit, Nurse Cash

states:

> On 1/11/96 regarding [plaintiff's] complaints:
> no rash to axilla, history of mild degenera-
> tive disc disease, pain medication ordered by

> the doctor, inmate was non-compliant with the
> order; no indication for a shave profile,
> there were no pustules or signs of irritation
> to the face; cold symptoms, which may be
> treated by our over the counter medication
> available in the inmate store, and are
> strictly for symptomatic relief and not re-
> quired.

Cash affidavit at 1.  Nurse Cash also states in her affidavit that

"[i]t is the doctor's final decision as to whether an inmate will

be seen for an appointment and/or medication is to be given."  *Id.*

at 2.

Plaintiff has provided no information regarding the rash

under his arm or the "flu-like virus" he claims to have had.  He

does not describe the extent or severity of the rash, nor does he

describe any of the symptoms he was experiencing at the time he was

seen by Nurse Cash.[6]  He has thus failed to establish that either

of these conditions constituted a serious medical need. *See Ware v.*

*Fairman*, 884 F. Supp. 1201, 1206 (N.D. Ill. 1995)(rash and flu are

not serious medical needs); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th

Cir. 1980)(cold is not a serious medical need).

Plaintiff has similarly failed to demonstrate that his

back, shoulder, and arm pains constituted serious medical needs.

While plaintiff indicates that these pains are the result of an

---

[6]Plaintiff alleges that on some unspecified date, he "col[l]aspse[d]" and was taken to the infirmary where he was seen by Nurse Walker "for some kind of virus which were causing [sic] dizz[i]ness, head and chest pain, stomach pains, and shortness of breath."  There is no indication that plaintiff was suffering these symptoms, or any others, at the time he saw Nurse Cash on January 11, 1996.

injury he sustained while in prison, he provides no information as to when and how he was originally injured.   He does not describe the extent and severity of the pains he now claims to suffer, nor does he allege that these pains prevent him from eating, sleeping, attending school, or engaging in recreational activities, or that the pain otherwise interferes with his ability to function within the prison.   Under these circumstances, it cannot be said that plaintiff's back, shoulder, and arm pain constituted serious medical needs.   Plaintiff also claims that Nurse Cash has ignored medical care requests that he submitted since January 11, 1996.   He does not, however, provide any evidence that he was suffering from a serious medical need at any time he requested medical attention. Because plaintiff has failed to establish that he had serious medical needs, his claim that Nurse Cash denied him medical care is due to be dismissed.

Plaintiff also asserts that Nurse Cash refused to allow him to see a doctor, that Nurse Cash was not qualified to assess his medical problems, and that Nurse Cash denied him an up-date of his shave profile.[7]   As to the first assertion, it is undisputed that Nurse Cash does not make the decision as to whether an inmate will be seen by a doctor.   Plaintiff offers no evidence to support his conclusory assertion that Nurse Cash was not qualified to

---

[7]A shave profile is a medical slip excusing a prisoner from complying with institutional rules requiring all inmates to be clean shaven.  Typically, inmates who suffer from "shaving bumps" (pseudofolliculitis barbae) or a rash are given a profile allowing them to use clippers  rather than a blade to shave.

assess his medical problems.  In any event, there is no constitu-
tional right to be treated by a medical doctor, rather than a
nurse.  As to the third assertion, plaintiff's prison medical
records clearly indicate that he had sought a shave profile from
both Dr. Cooksey and Nurse Arthur prior to his attempt to obtain a
profile from Nurse Cash.  Like Nurse Cash, Dr. Cooksey and Nurse
Arthur saw no medical need for a shave profile.  Plaintiff clearly
disagrees with these opinions; however, that disagreement does not
amount to a constitutional violation.  These claims are due to be
dismissed.

Warden Hightower, Dr. Beckman, and Captain Culliver

Plaintiff states that he wrote to Warden Hightower, Dr.
Beckman, and Captain Culliver complaining that Nurse Cash had
denied him medical treatment.  As discussed above, plaintiff has
failed to establish that he had a serious medical need and thus
cannot prevail on his claims against Nurse Cash.  Consequently, the
claims against Warden Hightower, Dr. Beckman, and Captain Culliver
are also due to be dismissed.

Dr. Lyrene

In his response, plaintiff asserts that Dr. Lyrene
examined him in 1994 "concerning [a] back injury and pinched nerves
in back and shoulder."  However, plaintiff provides no further
facts related to this incident.  Vague, general, or conclusory

allegations are insufficient to merit relief under § 1983. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Importantly, plaintiff does not allege any facts indicating that the examination or treatment was inadequate or inappropriate. This claim is due to be dismissed.

## Access To Courts

The Supreme Court has held that the due process clause of the Fourteenth Amendment assures inmates a right of meaningful access to the courts. However, the right of access to the courts as defined in *Bounds v. Smith*, 430 U.S. 817 (1977), requires only that inmates be provided with some reasonable means by which they may bring their legal claims before the court. This can be accomplished by one of several alternatives, including the appointment of counsel, providing the assistance of other persons trained in the law, or providing access to a law library. *See Lewis v. Casey*, ___ U.S. ___, ___, 116 S.Ct. 2174, 2180 (1996); *Bounds v. Smith*, 430 U.S. at 830. In *Lewis v. Casey*, the Supreme Court made clear that, in order to prevail on a claim that his right of access to the courts has been violated, an inmate must establish prejudice by "demonstrat[ing] that the alleged shortcoming in the library or legal assistance program [or other alternative provided] hindered his efforts to pursue a legal claim." ___ U.S. at ___, 116 S.Ct. at 2180. To establish such prejudice, an inmate "might show, for

example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id*.

In the present case, plaintiff complains that Officer Givens interfered with his use of the law library, thereby denying him access to the courts.  Inmates are to be notified when it is time to leave the cell block to go to the law library and those with valid passes to use the law library are then given ten to fifteen minutes to exit the cell block.  Once that ten to fifteen minute period has expired, the cell block doors are closed and inmates are not permitted to leave the cell block.  Plaintiff states that he was issued a pass to use the law library during the month of February, but from February 26 to March 2, 1996,[8] Officer Givens did not follow the procedure for notifying inmates that it was time to exit the cell block to go to the law library, then closed the cell block doors, and refused to allow plaintiff to exit the cell block.  Plaintiff has not alleged, however, much less set forth facts to demonstrate, that he was prejudiced by Officer Givens' actions.  There is absolutely no showing that plaintiff

---

[8]The court notes that plaintiff's law library pass did not cover this entire time period.

lost an action or suffered a dismissal due to Officer Givens' conduct.  Consequently, this claim is due to be dismissed.

Plaintiff also appears to be complaining that Officer Givens failed to follow the proper procedures for permitting inmates with law library passes to leave the cell block.  This claim is due to be dismissed since the mere fact that agency regulations have been violated does not by itself raise a constitutional issue. *United States v. Caceres*, 440 U.S. 741 (1979); *Caruth v. Pinkney*, 683 F.2d 1044 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214 (1983); *Dowdy v. Johnson*, 510 F.Supp. 836, 838 (E.D. Va. 1981).

Plaintiff further asserts that the "law library clerks [inmates] are denying population prisoners legal supplies and materials if they don't have a library pass.  Insufficient legal supplies are given with an pass."  Amended complaint at 5 (bracketed material in original).  With this allegation, plaintiff has failed to state a claim for which relief can be granted under 42 U.S.C. § 1983.  Section 1983 provides a remedy for deprivations of federally protected rights only if such claimed deprivations are the result of state action. *See District of Columbia v. Carter*, 409 U.S. 418, 423 (1973).  An action under § 1983 does not lie against a private person in his individual capacity.  It is only where a person acts to deprive another of his federal rights under color of state law that § 1983 provides authority for a federal claim.

*Parker v. Graves*, 479 F.2d 335 (5th Cir. 1973). Plaintiff has not alleged any conspiracy between the inmate law clerks, who are private persons, and any state official acting under color of state law.

But even if the actions of the inmate law clerks can be attributed to the state and, thus, are "state actions," the claim fails nonetheless. None of the inmate clerks themselves are sued in this action and there is no evidence that any of the named defendants were aware of the clerks refusing to give adequate legal supplies to the plaintiff. Nor, again, has he identified any prejudice, loss, or dismissal of an action he may have suffered due to the manner in which the inmate clerks distribute legal materials. Consequently, this claim is due to be dismissed.

## Improper Frisk

Plaintiff claims that on an unspecified date Officer Lampley subjected him to "an improper frist [sic]" in that Lampley "ran his hands into [plaintiff's] pockets." Amended complaint at 4. Plaintiff does not provide any further details concerning this alleged incident. Vague, general, or conclusory allegations are insufficient to merit relief under § 1983. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Moreover, inmates have no constitutional right to be free of frisk searches. *See Bell v. Wolfish*, 441 U.S. 520, 557-59 (1979); *Harris v. Ostrout*, 65 F.3d

912, 915-16 (11th Cir. 1995).  This claim is due to be dismissed.

### Verbal Harassment

Plaintiff complains that Officer Lampley has verbally harassed him on several occasions.  It is well established, however, that verbal harassment or abuse does not state a constitutional violation. *Bender  v.  Brumley, 994 F.2d 1151 (5th Cir. 1993), Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979).* Words, threats, and harassment are simply not actionable as violations of the Constitution. *Jones v. Superintendent*, 370 F. Supp. 488, 491 (W.D. Va. 1974)(*citing Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)). *See also Stacey v. Ford*, 554 F. Supp. 8 (N.D. Ga. 1982).  Furthermore, where threats of violence do not result in physical contact, a claim based upon such threats is due to be dismissed in a § 1983 action even where such threats are without apparent justification. *Simms v. Reiner*, 419 F. Supp. 468, 474 (N.D. Ill. 1976); *accord Bolden v. Mandel*, 385 F. Supp. 761, 764 (D. Md. 1974).  Under these principles, plaintiff's claim of verbal harassment is insufficient to state a constitutional claim.

## Cellmate With Mental Problems

Plaintiff was released from administrative segregation on Friday, December 8, 1995. Plaintiff's prison medical records reveal that, prior to his release, plaintiff told Dr. Rankart, the psychologist, that he did not wish to be placed in the mental health unit. Consequently, upon his release from segregation, plaintiff was placed in a general population cell. According to plaintiff, before he was placed in the cell, he was told by Officer McSwain and Lieutenant Ethericht[9] that his cellmate, Kenny Houston, was "having problems" and was on "suicide watch" and that Houston would be returned to Kilby Correctional Facility, possibly on the following Monday. Plaintiff states that while he was locked in the cell with Houston from Friday night until Monday, he "got no sleep at all" and was "tremendously stress[ed] out" because Houston talked about killing himself if he was not taken back to Kilby. Plaintiff spoke with Captain Culliver on Monday, December 11, 1995, and told Culliver that Houston had serious mental problems. According to plaintiff, Culliver laughed and said that Houston was

---

[9]Neither Officer McSwain nor Lieutenant Ethericht have been named as defendants in this action.

"just faking."[10]   Plaintiff also wrote to Dr. Rankart about Houston's mental problems.

The cell block in which plaintiff and Houston were housed was "locked down" December 19 to December 21, 1995.  During this period, Houston began to threaten plaintiff, saying that he was going to kill plaintiff and then kill himself.  Captain Culliver and Dr. Rankart were notified of these threats.  Captain Culliver moved plaintiff to another cell.  According to plaintiff, two other prisoners were placed in the cell with Houston and Houston assaulted both prisoners.

Plaintiff's allegations concerning his placement in the cell with Houston do not establish a violation of any constitu-

---

[10]Captain Culliver states:

> Inmate Houston has had some psychological problems and has also been known to try to manipulate the staff by claiming that he was having psychological problems. Inmate Brown and I discussed his living conditions with inmate Houston, there was some laughter between us. Inmate Brown stated that he felt he would be able to help inmate Houston overcome some of his problems. Inmate Brown stated to me that he did not need to move out of that cell at that particular time. However, I instructed inmate Brown that if he had additional problems with inmate Houston, he could advise me and seek a bed change.
>
> On a couple of occasions I did speak with inmate Brown concerning his living arrangements with inmate Houston and inmate Brown continued to state that it was going OK, but he thought that inmate Houston needed some help. The DOC psychologist and CMS psychologists were made aware of the psychological problems of inmate Houston. I personally spoke with inmate Houston, and on the day that I saw him he appeared to be coping well. On a later date, inmate Brown requested to be moved and I complied with his request.

Culliver affidavit at 2-3.

tional right.    Although inmates have a right to be reasonably
protected from substantial threats of harm by other inmates, it is
clear that inmates have no right to a cellmate of their own
choosing. *See Harris v. Grear*, 750 F.2d 617, 618 (7th Cir. 1984);
*United States ex rel. Miller v. Twomey*, 479 F.2d 701, 717 (7th
Cir. 1973); *Harvey v. Clay County Sheriff's Dep't*, 473 F. Supp.
741, 746 (W.D. Mo. 1979).    Further, plaintiff has not demonstrated
that Captain Culliver (the only named defendant involved in this
incident) was deliberately indifferent to a known danger or risk
that exposed plaintiff to "objectively, 'sufficiently serious'"
harm. *See Farmer v. Brennan*, 511 U.S. at ___, ____, 114 S.Ct. at
1977, 1979; *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.), *cert.
denied*, 496 U.S. 928 (1990); *Zatler v. Wainwright*, 802 F.2d 397,
400 (11th Cir. 1986).    While the Eighth Amendment's prohibition on
cruel and unusual punishments imposes upon prison officials a duty
to protect inmates "from physical assault by other inmates," *Zatler
v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986), it is undisputed
that plaintiff was *not* attacked or otherwise physically harmed by
Houston.

Sharing a cell with someone who is threatening to commit
suicide is no doubt an unpleasant experience; however, it does not,
in this case, rise to the level of a constitutional violation.
While it appears that plaintiff shared a cell with Houston for
eleven days, plaintiff complains of being continuously confined in

the cell with Houston only over the weekend of December 9-10, and during the lock-down on Monday through Wednesday, December 19-21. Plaintiff does not allege that Houston threatened him until sometime during the lock down. It appears that Captain Culliver moved plaintiff to another cell once the threats were reported. As noted above, plaintiff was not physically harmed by Houston. While plaintiff asserts that Houston assaulted two other inmates, he has no standing to complain on behalf of those inmates. *See generally Sims v. Department of Highway Safety and Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir.) ("[i]n order to satisfy the requirements of standing, a plaintiff must allege a personal injury fairly traceable to the challenged conduct and a likelihood of redress by the requested relief") (*citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982)), *cert. denied*, 493 U.S. 815 (1989). This claim is due to be dismissed.

<u>Conditions Of Confinement</u>

Conditions of confinement claims by convicted prisoners are governed by the Eighth Amendment proscription against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520 (1979). In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual

punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed. 2d 59 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, [502] U.S. [294, 303], 111 S.Ct. 2321, 2327, 115 L.Ed. 2d 271 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes omitted), *cert. denied*, 510 U.S. 1164 (1994).  Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson v. Seiter*, 502 U.S. at 290.

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). While it is the duty of jail officials to furnish prisoners with "reasonably adequate" food, clothing, shelter, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. at 349. As the Eleventh Circuit Court of Appeals observed in *Newman*: "[T]he Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." 559 F.2d at 291.

> [C]onditions that cannot be said to be cruel
> and unusual under contemporary standards are
> not unconstitutional. To the extent that such
> conditions are restrictive and even harsh,
> they are part of the penalty that criminal
> offenders pay for their offenses against
> society.

*Rhodes v. Chapman*, 452 U.S. at 347.

"To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca v. Turner*, 995 F.2d at 1535. In order to establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Id.* at 1535 (*quoting Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986)). *Accord Farmer v. Brennan*, 511 U.S. 825, ___, 114 S.Ct. 1970, 1979 (1994).

General Conditions

Plaintiff asserts that "half of the cell windows are broken out," that single and double cells provide less than 50 square feet of space per inmate, and that the "heat is not working properly." Complaint at 5-6. He does not, however, demonstrate how he personally has been deprived of a basic human need by these alleged conditions. Conclusory, vague, and general allegations are

31

insufficient to state a claim upon which relief under § 1983 can be granted. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). This claim is due to be dismissed.

## "Lack of Sanitation"

Plaintiff complains that "[t]he officers do[ ] not give out any cleaning and cell sanitizing supplies and materials" and that there is a "lack of sanitation." Amended complaint at 4. Plaintiff does not, however, provide any facts to support his conclusory assertions. While he does state that the commodes at Donaldson "do[ ] not know what disinfective [sic] or bleach is," *id.*, plaintiff does not allege that the commodes, or any other fixtures, are actually dirty. Moreover, plaintiff states that what cleaning supplies he can obtain he "ha[s] to buy from one of the inmates that cleans the dorms after everyone else has gone to bed at lock down time which [is] from 10:30 p.m. to 7:30 or 8:00 a.m. Sundays to Thursday." *Id.* It therefore appears that the dorms are cleaned on a regular basis. While "reasonably adequate" sanitation is clearly a basic human need, plaintiff has failed to allege any facts that would establish that he has been deprived of this need. This claim is therefore due to be dismissed.

## Conditions During Lock Down

Plaintiff states that during the three-day lock-down from December 19 to December 21, 1995, inmates were not allowed to

shower, to exercise, or to leave the cells, and were fed only "2 cold sandwiches 3 time[s] a day without anything to drink." Complaint at 5.  Plaintiff does not allege that the water in his cell was turned off during this lock-down, nor does he allege that he was totally deprived of liquid during this lock down.  While it may have been unpleasant for plaintiff to remain in his cell three days without a shower or exercise and to have only cold sandwiches to eat, plaintiff has failed to establish that he suffered a serious deprivation of any basic human need during the lock down. *See Stewart v. McGinnis*, 800 F. Supp. 604, 614-17 (N.D. Ill. 1992), *aff'd on other grounds*, 5 F.3d 1031 (7th Cir. 1993), *cert. denied*, 510 U.S. 1121 (1994).  This claim is due to be dismissed.

## Grievance and Disciplinary Proceedings

Plaintiff complains that the Alabama Department of Corrections has abolished the prison grievance procedure so that inmates "no longer can voice [their] grievances." Complaint at 5. However, "[i]n the context of a state prison system, an inmate grievance procedure is not constitutionally required." *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) *(citing United States ex rel Wolfish v. Levi*, 439 F. Supp. 114, 163 (S.D. N.Y. 1977), *aff'd in relevant part, 573 F.2d 118 (2d cir. 1978), rev'd on other grounds*, 441 U.S. 520 (1979); *O'Bryan v. County of Saginaw*, 437 F. Supp. 586, 601 (E.D. Mich. 1977)).

33

Plaintiff also complains of a number of alleged deficiencies in the disciplinary procedures. However, plaintiff does not allege that he himself has suffered any deprivation or harm due to these alleged deficiencies. Consequently, plaintiff lacks standing to challenge these procedures. *See Sims v. Department of Highway Safety and Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir. 1989). But even if he has been subjected to disciplinary sanctions, he has not alleged that he was exposed to conditions that were atypical of those of the ordinary prisoner. <u>Sandin v. Conner</u>, 515 U.S. ___, 115 S.Ct. ___, 132 L.Ed. 2d 418 (1995). Absent some facts indicating that he was punished in a way not typically used for prisoners, the due process clause was not violated. These claims are due to be dismissed.

## Conclusion

Accordingly, for the reasons stated above, the Court finds that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. By separate order, the Court will grant the motions for summary judgment and dismiss the action with prejudice.

DATED this ___ day of March, 1997.

EDWIN L. NELSON
U.S. DISTRICT JUDGE

34